## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLIOIS – EASTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE AND JACK DOE** | ) | |
| **on behalf of minors: JOHN DOE and JAMES DOE,** | ) | |
| **and JILL ROE on behalf of minor: JOE ROE** | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| **v.** | ) | **No. 23-cv-15221** |
| | ) | |
| **CHICAGO BOARD OF EDUCATION, which includes** | ) | |
| **FEDERICO GARCIA LORCA** | ) | |
| **ELEMENTARY SCHOOL  CHICAGO PUBLIC** | ) | |
| **SCHOOL DISTRICT 299 d/b/a CHICAGO PUBLIC** | ) | |
| **SCHOOLS; and ANDREW CASTRO, in his** | ) | |
| **individual capacity and as an employee of** | ) | |
| **the CHICAGO PUBLIC SCHOOLS** | ) | |
| | ) | |
| *Defendants.* | ) | |

_____

### COMPLAINT AT LAW

NOW COME the Plaintiffs, Jane Doe and Jack Doe on behalf of their two minor children, males, John Doe and James Doe, and Jill Roe on behalf of her minor child, male, Joe Roe ("Plaintiffs"), by and through their attorneys, The Karlin Law Firm, LLC, and make the following allegations against Defendants, CHICAGO BOARD OF EDUCATION, which includes FEDERICO GARCIA LORCA ELEMENTARY SCHOOL, CHICAGO PUBLIC SCHOOL DISTRICT 299 d/b/a CHICAGO PUBLIC SCHOOLS, and ANDREW CASTRO, in his individual capacity and as an employee of the CHICAGO PUBLIC SCHOOLS, as follows.

### INTRODUCTION

1

1.     This lawsuit is brought on behalf of three minor children as a result of: (a) actions and inactions of the Defendants which enabled and emboldened Defendant ANDREW CASTRO to engage in acts of sexual harassment, sexual misconduct, grooming and other tortious behavior; (b) from the failure of Defendants to protect the minor children; (c) from the failure to appropriately hire, supervise, and train administration and staff to prevent sexual harassment and grooming of female students, and (d) from the willful and wanton neglect and reckless indifference of CHICAGO BOARD OF EDUCATION, which includes FEDERICO GARCIA LORCA ELEMENTARY SCHOOL, CHICAGO PUBLIC SCHOOL DISTRICT 299 d/b/a CHICAGO PUBLIC SCHOOLS (hereinafter collectively "CBOE"), through its various administrators and school officials.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of this action under 42 U.S.C. §1983 in that Defendant Andrew Castro's conduct, while acing under color of law, violated rights guaranteed to Plaintiffs under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, and under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et. seq. This Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. §1367(a).

3.     Venue is proper under 28 U.S.C. §1331 and 28 U.S.C. §1367.  The events giving rise to the claims asserted here all occurred within the district, and all of the parties reside in this district.

## PARTIES

4.     Plaintiffs John Doe, a male born on September 30, 2007 ("John Doe"), James Doe, a male born on June 9, 2009 ("James Doe"), and Joe Roe, a male born on February 1, 2008 ("Joe

Roe"), at all relevant times were minors and students attending Federico Garcia Lorca ELEMENTARY SCHOOL (hereinafter known collectively as "Minor Plaintiffs").

5.      Plaintiffs Jane Doe and Jack Doe are parents of John and James Doe, the two minor males who are brothers.

6.      Plaintiff Jill Roe is a mother of Joe Roe, a minor male, who is also a cousin to John and James Doe.

7.      At all relevant times herein, Defendant Chicago Board of Education d/b/a City of Chicago School District 299 d/b/a Chicago Public Schools ("CBOE"), is a body politic and corporate under the laws of the State of Illinois. The Defendant CBOE maintains offices at 1 N. Dearborn, Suite 950, Chicago, Illinois.

8.      At all relevant times herein, CBOE was a government entity doing business in the County of Cook, City of Chicago, and the State of Illinois engaged in operating, managing, and controlling public schools.

9.      CBOE benefits substantially from the receipt of federal financial assistance and constitutes a program or activity that has long qualified for such federal financial assistance.

10.     CBOE is in charge of providing a public education to students, including minors such as John Doe, James Doe, and Joe Roe, through: (a) oversight and supervision of all school functions, school property, and school student programs, and (b) the hiring, supervision, management, assignment, control, and regulation of individuals who serve as staff members, including but not limited to school teachers as well as the review and supervision of school curriculum.

11.     CBOE is also in charge of and responsible for the enforcement of all policies and procedures, and guidelines within the Chicago Public Schools. This charge and responsibility

3

include supervision and discipline of teachers, staff, and administrators including but not limited to Andrew Castro, July Cyrwus, Sue Danielson, Nicolas Cartagena, Alba Rodriguez, Ivet Gonzales, and Mr. Ramon.

12.    At all relevant times herein to this cause of action, CBOE employed various personnel including, but not limited to, principals, teachers, school counselors, teachers' aides, security guards, coaches, and other staff, for the purposes of operating, managing and controlling its schools.

13.    At all relevant times herein, Frederico Garcia Lorca ELEMENTARY SCHOOL (hereinafter "FGL Elementary"), was a public school in the City of Chicago, part of Chicago School District 299, and was operated by CBOE. FLG Elementary is located at 3231 N. Springfield Avenue in the City of Chicago, County of Cook, State of Illinois. During the period of September 2017 until on or about July 2021, at all relevant times, Defendants, CBOE and Chicago School District 299 d/b/a Chicago Public Schools owned, possessed, maintained, controlled, staffed, and operated FGL Elementary.

14.    During the period of September 2017 until on or about July 2021 or until the time of his termination, and at all relevant times, Defendant Andrew Castro (hereinafter "Castro"), was a physical education ("PE") teacher at FGL Elementary, and was also a resident of Chicago, Illinois.

15.    Additionally, at all relevant times, Castro was also a real estate broker involved in buying/selling real estate in Cook County, Illinois.

16.    At all relevant times Castro was an employee of CBOE and was acting within the scope of his employment and under color of state law. Castro is named in his official and individual capacity.

4

## NON-PARTY ADMINISTRATORS AND CBOE EMPLOYEES

17.     July Cyrwus ( "Cyrwus") is an individual who resides in Cook County, Illinois, and at all relevant times herein she was employed by CBOE and was, and still is, the principal of FGL Elementary who is responsible for education, health, safety and welfare of all students attending that school. As a condition of her employment, Cyrwus signed an acknowledgment of mandated DCFS reporter status.

18.     Sue Danielson ("Danielson") is an individual who resides in Cook County, Illinois. At all relevant times herein, she was and is currently employed by CBOE and FGL Elementary as a PE teacher. On information and belief, Danielson acted in a supervisory role over Defendant Castro as a physical education teacher. As a condition of her employment, Danielson signed an acknowledgment of mandated DCFS reporter status.

19.     Nicolas Cartagena ("Cartagena") is an individual who resides in Cook County, Illinois. At all relevant times herein, he was and is currently employed by CBOE and FGL Elementary. Cartagena used to be an English teacher at FGL Elementary. He is now its Vice Principal. As a condition of his employment, Cartagena signed an acknowledgment of mandated DCFS reporter status.

20.     Alba Rodriguez ("Rodriguez") was an individual who resided in Cook County, Illinois. At all relevant times herein, she was employed by CBOE and FGL Elementary. Rodriguez was a school assistant. As a condition of her employment, Rodriguez signed an acknowledgment of mandated DCFS reporter status.

21.     Ivette Gonzales ("Gonzales") is an individual who resides in Cook County, Illinois. At all relevant times herein, she was and is currently employed by CBOE and FGL Elementary as

an art teacher. As a condition of her employment, Gonzales signed an acknowledgment of mandated DCFS reporter status.

22.     Mr. Ramon (first name unknown) ("Ramon") was an individual who resided in Cook County, Illinois. At all relevant times herein, he was employed by CBOE and FGL Elementary as a security guard. As a condition of his employment, Ramon signed an acknowledgment of mandated DCFS reporter status. His current employment status is unknown.

23.     Cywrus, Danielson, Cartagena, Rodriguez, Gonzales, and Ramon, hereinafter to be known as "FGL Elementary Staff."

**FACTS COMMON TO ALL COUNTS**

24.     The Minor Plaintiffs, Does and Roe, come from low-income, immigrant families whose parents do not speak English and whose primary language is Spanish. The Minor Plaintiffs are all fluent in English.

25.     Defendant Castro does not speak Spanish and therefore could not communicate with the parents of the Minor Plaintiffs.

26.     Plaintiff Joe Roe's father has not supported, and has not participated in raising Joe Roe, who is raised solely by his mother. Jill Roe is a single working mother.

27.     All Plaintiffs are related and live in the same household.

28.     At all relevant times Defendant Castro, within the scope and course of his employment by the Board of Education, and under color of state law, was a PE teacher for all Minor Plaintiffs.

29.     Defendant Castro began searching for vulnerable students to sexually abuse by striking up conversations with each student during PE class where he would inquire about their

family lives. During PE class, Defendant Castro, struck up a conversation with the Minor Plaintiffs regarding their family life and their situations at home.

30.     As a result of the aforesaid "screening" conversations, Defendant Castro selected the Minor Plaintiffs as a special object of his interest and began to groom them as future victims of his sexual abuse.

31.     Minor Plaintiffs would often play soccer before and after class with other children. If time allowed, the Minor Plaintiffs would, at Defendant Castro's invitation, spend time in Defendant Castro's office during the hours of operation of FGL Elementary where they would have conversation about everyday subjects.

32.     Then during the 2017-2018 school year, Castro insisted on coming to watch the Minor Plaintiffs play in soccer matches, which the boys played outside of school grounds in public parks. Even though he did not have to, Castro would ask the Minor Plaintiffs to obtain permission from their parents for him to come and to watch them at the soccer matches. He did this as part of his grooming efforts so that his showing up at the soccer matches would not appear threating or strange to the Minor Plaintiffs and so he could gain their trust, and that of their parents.

33.     During this period when Castro would come and watch the Minor Plaintiffs at their soccer matches, he started taking them of out for lunch afterwards.

34.     During this same time period, Castro insisted that Plaintiffs John and James Doe call him "godfather" and that Plaintiff Joe Roe, who was fatherless, call him "dad."

35.     During this same time, Castro started having direct electronic communications with the Minor Plaintiffs using his personal electronic devices and accounts. He did this to circumvent monitoring of his electronic communications with the Minor Plaintiffs by Chicago School District

299. "Fraternization" communications with students like the Minor Plaintiffs is a red flag for inappropriate behavior.

36.     During the 2018-2019 period, the fact that Castro was having electronic communications with the Minor Plaintiffs for the purposes of fraternization became obvious and known to Danielson and Cyrwus, as will be outlined in subsequent paragraphs, *infra*.

37.     As the 2017-2018 school year progressed, Defendant Castro started taking the Minor Plaintiffs out to more expensive activities such as bowling at Waveland Bowl on Western Avenue, Sky High Sports in Niles, movies, and shopping at a local mall.

38.     All the activities were financed by Defendant Castro, and he drove the Minor Plaintiffs to all the activities in his Lexus SUV. Furthermore, Castro would make small gifts to the Minor Plaintiffs in the form of gift cards and items purchased at various stores, such as Five Below.

39.     Defendant Castro transported the Minor Plaintiffs in his vehicle without written consent of the Minor Plaintiffs' parents.

40.     Defendant Castro's generosity, which was a part of his plan to groom the Minor Plaintiffs to be sexual abuse victims, secured the trust of the Minor Plaintiffs, and caused the parents of the Minor Plaintiffs to become more at ease with Castro's constant presence in the Minor Plaintiffs' lives.

41.     Later in 2018, Defendant Castro began inviting the Minor Plaintiffs to his home located at McVicker Avenue in Chicago, Illinois, as part of his plan to groom the Minor Plaintiffs to be sexual assault victims.

42.     As Defendant Castro continued his "grooming" of the Minor Plaintiffs, tricking and coercing them into trusting him, Castro also made efforts to win the trust of the Minor Plaintiffs' parents, Jane Doe, Jack Doe and Jill Roe.

8

43.     Defendant Castro hired Plaintiffs John and James Doe's father, Jack Doe, and the adult sister of Plaintiffs John and James Doe, Miriam Doe, to renovate his home at McVicker Avenue, for $20,000, which was paid to them. From then on Castro would hire Jack Doe and Miriam Doe to renovate his real estate projects for which he paid them. This was part of the grooming of the children as it was an attempt to make the father and adult sister of Plaintiffs John and James Doe financially dependent and subservient to Castro.

44.     Also, late in 2018, Defendant Castro offered and gave rides to the Minor Plaintiffs from school to his home at McVicker Avenue. On information and belief, this was observed by members of the faculty at FGL Elementary.

45.     Starting in late 2018, the Minor Plaintiffs started regularly visiting Defendant Castro at his house, first approximately twice a month, then evolving to up to 2-3 times a week.

46.     As part of his grooming process, Defendant Castro, while at Castro's home and at Castro's suggestion, the Minor Plaintiffs would be playing board games, card games such as UNO, dice games, video games, as well as watch movies and share meals with Defendant Castro.

47.     Furthermore, in late 2018, Castro began moving his grooming of the Minor Plaintiffs into its final phase. At that time while the Minor Plaintiffs were at his home, after finishing a game, Defendant Castro demanded, from the boy who scored the lowest number, that the boy take off his pants and spin his penis. That demand would also extend to the other boys as well. Defendant Castro called this behavior a joke, which he called a "full moon," during which he also participated by taking off his pants and exposing himself to the Minor Plaintiffs.

48.     Also, on some of the occasions after finishing a game, Defendant Castro would "dry hump" the minor Plaintiffs one by one, which he also told the Minor Plaintiffs was a joke.

49. The Minor Plaintiffs were ashamed of the aforesaid behavior of "full moon" and "dry humps," but because they were embarrassed, because they enjoyed the gifts and attention given to them by Castro, and because Castro employed the John and Joe Doe's father and sister, the Minor Plaintiffs did not want to get Defendant Castro in trouble, so they did not tell about these perverted "games" that Castro forced them to participate in.

50. Then, around the same time that the aforesaid "full moon" and "dry humps" behavior started, which was in late 2018 and into 2019, the Minor Plaintiffs started sleeping over at Defendant Castro's home on McVicker Avenue.

51. During the sleepovers, sometimes, all Minor Plaintiffs and Defendant Castro would sleep in one bed and other times Defendant Castro would sleep with Plaintiff Roe in one bed while Plaintiffs John and Joe Doe would sleep in a separate bedroom.

52. During that same time, in late 2018 to early 2019, on at least one occasion, Defendant Castro sexually assaulted Plaintiff John Doe (who was 12 years of age at the time of the assault). This sexual assault was accomplished by Castro by separating John Doe from the other Minor Plaintiffs while they were at Castro's home on McVicker Ave., then taking his pants down and ordering Plaintiff John Doe to do the same, and then putting his penis between John Doe's butt cheeks. After the sexual assault was completed, Defendant Castro gave John Doe $20.

53. Defendant Castro's relationship with the Minor Plaintiffs, was on information and belief, well known to Danielson and Cyrwus. On information and belief: (1) Danielson was a good friend of Defendant Castro and was aware of Castro's times spent with the Minor Plaintiffs; (2) on at least one occasion, Cartagena, then English teacher, now the current Vice Principal of FGL Elementary, ran into the minor Plaintiffs and Defendant Castro at the Hip Mall at 4104 N. Harlem Avenue in Chicago while the Minor Plaintiffs and Defendant Castro were visiting the mall

10

together; (3) on another occasion, Rodriguez, a School Assistant from FGL Elementary, ran into the Minor Plaintiffs and Defendant Castro at a movie theater; (4) other faculty members and employees who knew of the unusual relationship between Defendant Castro and the Minor Plaintiffs include Ms. Gonzales, an art teacher, and Mr. Ramon a security guard.

54. From hearing fellow students talk about it, and hearing and observing faculty members at FGL Elementary when the topic of Castro and the Minor Plaintiffs was mentioned, it was apparent that it was common knowledge among faculty and students that Castro has formed a highly unusual and inappropriate relationship with the Minor Plaintiffs.

55. Danielson, Cyrwus, and the members of the faculty at FGL Elementary who were aware of the relationship between Castro and the Minor Plaintiffs choose to abide by the *de facto* policy of CBOE of being deliberately indifferent to the sexual abuse of students, and failed to report Castro, or report the unusual relationship between Castro and the Minor Plaintiffs to school officials of CBOE, the police, or otherwise act to stop Castro from having an outside relationship with the minors.

56. Prior to the Covid-19 pandemic lockdown, Defendant Castro became so brazen and confident that he suggested to Jill Roe that he would like to adopt Joe Roe. Jill Roe refused to consent to Castro's scheme. Joe Roe was not the first child Castro attempted to adopt.

57. During Covid-19 pandemic lockdowns, Defendant Castro was teaching classes remotely on Zoom.

58. At the beginning of the Covid lockdowns, in 2020, Plaintiff Joe Roe would go visit Defendant Castro at his home alone on McVicker Ave. They would play dice games that would culminate with Defendant Castro "dry humping" Plaintiff Joe Roe in which Defendant Castro

11

would simulate intercourse with Plaintiff Joe Roe through clothing, which would cause Defendant Castro to be sexually aroused.

59.     Then later in 2020, Plaintiff John and James Doe rejoined Plaintiff Joe Roe in sleepovers at Castro's home. The sexual behavior described above continued during these sleepovers.

60.     In the fall of 2020, Defendant Castro sold his home on McVicker Avenue and moved to an apartment on Northwest Highway in the Northwest side of Chicago.

61.     Around Christmas time in 2020, in the middle of the night, there was a dispute over a spilled orange juice between the Minor Plaintiffs and Castro. Castro accused the Minor Plaintiffs of causing the mess and ordered them to clean it up. Castro took possession of the Minor Plaintiffs' phones, but soon gave them back to John Doe and Joe Roe, but not to Plaintiff James Doe (11). Castro grabbed Plaintiff James Doe by the armpits and forcibly moved him to a bedroom of the Northwest Highway apartment. Castro pinned Plaintiff James Doe to the ground holding him by the wrists and threatened to slap him. Plaintiff James Doe screamed in pain and Castro let go of him. Plaintiff James Doe left the apartment in the middle of the night, but soon came back, gathered his phone and called his parents for a ride.

62.     On May 17, 2021, all parents and families of FGL Elementary received an email stating in part that: "There has been an allegation that one of our staff members engaged inappropriately with a student. This employee has been removed from the school, and an investigation has been initiated by the Office of the Inspector General (OIG)."

63.     The parents of the Minor Plaintiffs became suspicious and confronted the Minor Plaintiffs about their time with Castro. The Minor Plaintiffs denied that anything wrong happened while they were with Castro.

12

64. Castro allegedly stopped being a teacher at FGL Elementary shortly after the aforesaid email from the school was sent. On information and belief, Castro was suspended from teaching.

65. Through the school rumors, the Minor Plaintiffs learned that a boy named H. C. had accused Castro of inappropriately touching him.

66. Plaintiff John Doe and Plaintiff Joe Roe asked Castro about these rumors, and Castro admitted that in fact H. C. accused him of inappropriate behavior and told the boys he could not go back to school until H. C. graduated. Castro told the Minor Plaintiffs that H. C. was angry with him because he would not change his grade.

67. Even though he was suspended from teaching at FGL Elementary, Castro continued to have contact with the Minor Plaintiffs, by phone and text and he still had them for sleepovers at his apartment on the Northwest side of Chicago. However, at this point in time, Castro stopped all inappropriate "games" with the Minor Plaintiffs for a while.

68. Jane and Jack Doe and Jill Roe did not stop the Minor Plaintiffs from having contact with Castro nor sleeping over Castro's home because nobody from FGL Elementary, including but not limited to Cyrwus and Danielson, warned them that Castro had been suspended because of inappropriate sexual behavior and could be a sexual predator.

69. In the second part of 2021, Castro moved to an apartment on East River Road, Chicago, Illinois, in a building with an indoor pool. The Minor Plaintiffs continued to visit Castro at this new location and often used the indoor pool.

70. Embolden with the Minor Plaintiffs behavior, Castro used the time in the pool to grab the Minor Plaintiffs by their private parts, touching their testicles and squeezing their

13

buttocks. This would happen every time the Minor Plaintiffs and Castro were in the pool. At this point Castro resumed all sexualizing behavior with the Minor Plaintiffs.

71.     At the new apartment at East River Road, the Minor Plaintiffs would resume the sleepovers. They would play card/dice games, play video games, and share food, after which Castro would engage in sexually abusing them.

72.     In late fall of 2021, at the East River Road apartment, one evening, Castro asked Plaintiff James Doe (12) to give him a back massage. Plaintiff James Doe agreed. They went to a spare bedroom and Plaintiff James Doe gave Castro a quick shoulder/back massage. Castro offered to reciprocate. Castro massaged James Doe's back, thighs, and legs, and then pulled down Plaintiff James Does pants and start touching his genitals and buttocks. Castro told James Doe not to tell anyone – this is going to be their little secret. Being scared, James Doe didn't understand what was going on and didn't know what to do. At that point, Castro bent Plaintiff James Doe over and penetrated his anus with his penis from behind. After a short period, Castro pulled his penis out of James Doe and went to the bathroom to ejaculate. Plaintiff James Doe was terrified at this point.

73.     Plaintiff James Doe stopped coming to Castro's apartment.

74.     The next time Plaintiff James Doe joined the other Minor Plaintiffs and Castro was when they all went out with Castro to a store, "Five Below." Castro allows them to pick out a couple small items. Plaintiff James Doe picked up something that was a little more expensive and told Castro he would pay him back. They all went back to Castro's apartment where Castro isolates Plaintiff James Doe and told him he didn't have to pay him back and instead Castro raped him again.

75.     Soon after, Castro raped Plaintiff James Doe again at the East River Road apartment.

76.     Soon after the last rape, Plaintiff James Doe stopped going with John Doe and Joe Roe to see Castro all together. He became withdrawn. He started self-harming/cutting himself.

77.     On April 8, 2022, Plaintiff James Doe attempts to confront Castro via text message, but Castro avoided the topic.

78.     Sometime later, Plaintiff James Doe attempted to see a school counselor, Mr. Kuckla, but didn't know how to open up to him about the abuse.

79.     In the meantime, on April 20, 2022, Anjum Siddiqui, an attorney from the Office of the Inspector General for the Chicago Board of Education, emailed John and James Doe's parents to let them know that Plaintiff John Doe was "identified as having been involved in or possibly witnessing an incident of inappropriate behavior by that staff member," who they were alerted of in the May 17, 2021, email. With the parents' permission, Attorney Siddiqui would contact Plaintiff John Doe via phone during his school hours.

80.     Plaintiff John Doe shared the email with Castro and Castro convinced him to lie on his behalf if/when Attorney Siddiqui would speak to him in order to protect Castro's teaching license.

81.     Attorney Siddiqui did call the school in order to speak to Plaintiff John Doe. John Doe was put alone in the principal's office in order to have the phone call with Attorney Siddiqui. Plaintiff John Doe lied to Attorney Siddiqui in order to protect Castro's teaching license.

82.     Early in 2022, Castro moved to another location at Berteau Avenue in Chicago, Illinois. When John Doe was over at that apartment, Castro offered $100 to have sex with him. Plaintiff John Doe refused.

83.     On or about Mother's Day in May of 2023, John and James Doe's father Jack Doe discovered that Plaintiff James Doe was harming himself.

15

84. Miriam Doe had a one-on-one conversation with Plaintiff James Doe, and he confided in her that he was raped multiple times by Castro. Miriam Doe informed Jack and Jane Doe of the sexual abuse.

85. Jack and Jane Doe called the Chicago Police Department to report that Castro had raped James Doe. One of the investigating detectives informed the Doe family that Castro had four prior complaints of sexual abuse, which CPD is required to report to CBOE.

86. Shortly after Jack and Jane Doe reported James Doe's rape to the Chicago Police Department, Castro was arrested and charged with raping James Doe and sexually abusing John Doe, James Doe, and Joe Roe, all who were minors. Castro is being held without bond and waiting for a resolution of his criminal case (2023CR0760901).

87. CBOE had actual and constructive knowledge of Castro's years of grooming behavior, his inappropriate relationship with the Minor Plaintiffs, and his inappropriate encounters with other students at FGL Elementary, and never took any interim action to discipline Castro.

88. Defendant Castro was always acting within the scope of his employment during the time he was employed by CBOE.

89. Danielson, Cyrwus, Cartagena, Rodriguez, Gonzales, and Ramon were, at all relevant times, mandated reporters under the Illinois Abused and Neglected Child Reporting Act ("ANCRA"), and each and all of them acknowledged this circumstance as a condition of their employment for the CBOE.

90. In or about 1997, CBOE adopted ANCRA, and all CBOE personnel must acknowledge it.

91. Moreover, in June of 2022, the Chicago Public Schools adopted a manual, where it clarified the definition of grooming in section 511.1:

"Grooming" – Behavior a person in a position of trust or authority uses to build an emotional connection with a child or young person, including a student who may be over 18 years of age, to gain their trust and break down inhibitions for a sexual purpose.

The definition of grooming under this Policy includes but is not limited to the following:

(a) A person commits grooming when they knowingly use a computer online service, internet service, local board service, or any other device capable of electronic data storage or transmission, performs an act in person or by conduct through a third party, or uses written communication to seduce, solicit, lure or entice, or attempt to seduce, solicit, lure, or entice a child…to commit any sex offenses… .

(b) A person may be grooming a child or engaging in inappropriate intimate behavior with a child when the person engages in behavior that includes but is not limited to:

- Creating or engaging in isolated, one-on-one interactions with a child (e.g., transporting a child without the written authorization…, texting or direct messaging the child);
- Giving or attempting to give gifts to a child (e.g., money, clothing); or
- Crossing physical boundaries (e.g., touching, giving prolonged hugs, or making the child sit on the adult's lap).

92.     From 2017 through 2021, Castro committed the following acts of teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse through use of his power and authority as a PE teacher at FGL Elementary:

(a) Exposing himself to Minor Plaintiffs;
(b) Causing the Minor Plaintiffs to expose themselves to Castro;
(c) Simulating sex through clothing with the Minor Plaintiffs;
(d) Touching Minor Plaintiffs' genitalia and buttocks.
(e) Touching Minor Plaintiffs' arms, legs, thighs;
(f) Hugging Minor Plaintiffs;
(g) Raping two of the Minor Plaintiffs;

These acts are referred to herein collectively as sexual harassment and/or sexual grooming and/or sexual abuse.

## FEDERAL CLAIMS
## SEC. 1983 DUE PROCESS AND TITLE IX (20 USC §1681)

93.     Plaintiffs re-allege and incorporate paragraphs 1 through 92 of this Complaint as paragraph 93 of this Complaint.

94.     John Doe, James Doe, and Joe Roe have a right to bodily integrity and personal security under the Due Process Clause of the Fifth Amendment and Fourteenth Amendment to the Constitution of the United States.

95.     As alleged above, John Doe, James Doe, and Joe Roe's right to bodily integrity was violated by Castro when he sexually abused them while he was acting as their PE teacher under color of state law.

96.     The Board of Education had, at all times relevant hereto, a *de facto* policy, practice and custom of disregarding warning signs of ongoing sexual abuse or employees who were engaged in grooming students, failing to investigate reports of sexual misconduct, ineffective background checks of employees, failure to notify child welfare agencies or police when a report of sexual abuse was made, failing to take action against employees even when reports of sexual abuse of students are credible, failing to advise parents that their children were victims of sexual abuse, and failing to warn parents that employees who had been acting inappropriately with their child.,[1]  (See July 27, 2017 Chicago Tribune investigative expose *Betrayed*  which contains facts and figures on this issue (https://graphics.chicagotribune.com/chicago-public-schools-sexual-abuse/)

97.     As a direct result of these *de facto* policies, practices and customs, Castro believed he could act with impunity, and in fact he would suffer no consequences or accountability for

---

1, These de facto polices, customs and practices occurred for over a decade starting in 2008, resulting in 523 students being sexual abused by teachers and employees of the Board of Education between 2008 and 2017 are outlined in detail in the July 27, 2017 Chicago Tribune investigative expose *Betrayed*  (https://graphics.chicagotribune.com/chicago-public-schools-sexual-abuse/)

sexually abusing students of FGL Elementary.

98.     As a direct result of Castro's belief that he could act with impunity and without suffering any consequences for his actions, he groomed and sexually abused Plaintiffs John Doe, James Doe, and Joe Roe.

99.     On information and belief, Cyrwus, Danielson, Cartagena, Rodriguez, Gonzales, and Ramon, knew of, or turned a blind eye to, the grooming and sexual abuse of the Minor Plaintiffs, as set out in more detail *infra.*

100.    As a result of the forgoing, the rights of the Minor Plaintiffs to bodily integrity and personal security under the Due Process Clause of the Fifth Amendment and Fourteenth Amendment to the Constitution of the United States were violated by Castro and CBOE.

101.    Under Title IX of the Education Amendments of 1972 at 20 USC §1681, the Minor Plaintiffs John Doe, James Doe, and Joe Roe, have a right to be free from sexual abuse by an employee or teacher of Chicago Board of Education d/b/a Chicago Public School District 299 at FGL Elementary.

102.    At all times relevant hereto, FGL Elementary and the Chicago Board of Education d/b/a Chicago Public School District 299 receive Federal financial assistance within the meaning of 20 USC §1681 et. seq.

103.    Plaintiffs John Doe, James Doe, and Joe Roe, as students at FGL Elementary were among those who are intended to be protected by Title IX of the Education Amendments of 1972 at 20 USC §1681.

104.    The aforesaid actions of sexual abuse of the Minor Plaintiffs John Doe, James Doe, and Joe Roe, by one of their teachers, Castro, undermined their education and the entire purpose of the educational system operated by the Chicago Board of Education d/b/a Chicago Public

School District 299 and funded by Federal financial assistance.

105.    The Minor Plaintiffs John Doe, James Doe, and Joe Roe, were all subjected to sexual abuse by Castro because they were males.

106.    By the 2018-2019 school years, on information and belief, Cywrus and Danielson knew from the reports of other members of the faculty and employees of FGL Elementary that Castro was intimately involved in activities with the Minor Plaintiffs, to wit: picking up the Minor Plaintiffs after school and driving them to his house, and picking them up after school and going shopping with them where he would buy them gifts, as well as taking them to movies, dinners, bowling and other such activities. Cyrwus and Danielson knew that this type of relationship between a teacher and student was not acceptable because of the high likelihood of the sexual exploitation of the students and knew that these actions by Castro were part of the methodology that sexual predators of children use to ensnare and abuse their victims.

107.    Despite FGL Elementary Staff having the aforesaid knowledge that Castro was acting in such a way with the Minor Plaintiffs that their sexual abuse and exploitation was almost certain to occur, if it had not already occurred, FGL Elementary Staff did nothing and were deliberately indifferent that the Minor Plaintiffs would be sexually abused at Castro's hands.

108.    Then prior to May 17, 2021, Cyrwus became aware that Castro had engaged in sexual misconduct with a student at FGL ELEMENTARY SCHOOL. Despite her knowledge of this misconduct by Castro, Cyrwus was deliberately indifferent to the welfare of the Minor Plaintiffs and concealed the identity of Castro as the abuser from Jane and Jack Doe and Jill Roe, and further failed to warn them that their children were almost certainly being sexually abused by Castro.

109.    On May 17, 2021, a general email was sent by Cyrwus to the parents of all students

at FGL Elementary that a "staff member" of FGL Elementary "engaged inappropriately with a student." The email did not identify who the staff member was or provide any information by which the staff member could be identified. In fact, Castro was the staff member the email was referring to.

110.    The deliberate indifference of Cyrwus to the sexual abuse of the Minor Plaintiffs by Castro was so great that when the parents of the Minor Plaintiffs phoned Cyrwus after receiving the aforesaid email of May 17, 2021, to inquire further about the identity of the "staff member" or if their children could have been a victim, Cyrwus refused to give them any information.

111.    Cyrwus had the authority to institute corrective measures such as barring Castro from FGL Elementary, reporting him to the Board of Education, calling the Chicago Police Department or DCFS, or warning the parents of the Minor Plaintiffs.

112.    Because of the sexual abuse of Castro, a PE teacher at FGL Elementary, and the deliberate indifference of Cyrwus, the Minor Plaintiffs', John Doe, James Doe, and Joe Roe's education was undermined as was the entire purpose of the educational system operated by the Chicago Board of Education d/b/a Illinois School District 299.

113.    As a direct and proximate result of actions and omissions of the Defendants Chicago Board of Education, which includes Federico Garcia Lorca ELEMENTARY SCHOOL, d/b/a Chicago Public School District 299 d/b/a Chicago Public Schools, and Andrew Castro, the Minor Plaintiffs have suffered and continue to suffer emotional distress, psychological harm, physical harms, and other injuries.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor, against Defendants Chicago Board of Education, which includes Federico Garcia Lorca ELEMENTARY

SCHOOL, d/b/a Chicago Public School District 299 d/b/a Chicago Public Schools, and Andrew Castro for an amount in excess of $100,000.00, plus punitive damages, and such other and further relief as is appropriate under the circumstances

## STATE LAW CLAIMS

### COUNT I - SEXUAL BATTERY
**(As to all Minor Plaintiffs and against Defendant Castro)**

114.    Plaintiffs re-allege and incorporate paragraphs 1 through 113 of this Complaint as paragraph 114 of Count I of this Complaint.

115.    At all relevant times to this Complaint, between approximately September 2017 and December 2021, Defendant Castro intentionally made physical contact with the Minor Plaintiffs of a harmful nature on multiple occasions as alleged aforesaid.

116.    The aforesaid physical contact by Castro was of sexual nature and was non-consensual.

117.    As a direct and proximate result of Defendant Castro's unlawful conduct, the Minor Plaintiffs have suffered and continue to suffer physical harm, severe emotional distress, psychological harm, and other injuries.

118.    Defendant Castro's actions were willful and malicious, and exhibited a reckless disregard for the rights and safety of the Minor Plaintiffs.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against Defendant Andrew Castro in an amount in excess of $100,000.00, plus punitive damages, and such other and further relief as is appropriate under the circumstances.

### COUNT II– BATTERY
**(As to Plaintiff James Doe and Against Defendant Castro)**

22

119.     Plaintiffs re-allege and incorporate paragraphs 1 through 118 of this Complaint as paragraph 119 of Count II of this Complaint.

120.     As more fully stated above Defendant Castro knowingly and intentionally made a harmful and offensive contact with Plaintiff James Doe.

121.     As a result of the offensive conduct, Plaintiff James Doe has suffered physical and emotional harm.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minor James Doe, pray that this Court enter judgment in their favor and against Defendant Andrew Castro in an amount in excess of $100,000.00, plus punitive damages, and such other and further relief as is appropriate under the circumstances.

### COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (As to all Minor Plaintiffs and Against Defendant Castro)

122.     Plaintiffs re-allege and incorporate paragraphs 1 through 121 of this Complaint as paragraph 122 of Count III of this Complaint.

123.     Defendant Castro knew or should have known that his sexual abuse and battery of the Minor Plaintiffs would cause them to suffer extreme emotional distress.

124.     The Minor Plaintiffs, in fact, suffered physical, mental, emotional, psychiatric, and psychological detriment as a result of the sexual abuse perpetrated upon them by Defendant Castro.

125.     The conduct of Defendant Castro, as more specifically set forth *supra*, was outrageous and extreme and substantially certain to inflict severe and enduring emotional and psychological harm and disturbance in a minor person of reasonable sensibility, including the Minor Plaintiffs.

126.     As a direct and proximate cause of the aforementioned conduct of Defendant Castro, the Minor Plaintiffs suffered severe and permanent injuries to their physical, emotional, and psychological health.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against Defendant Andrew Castro in an amount in excess of $100,000.00, plus punitive damages, and such other and further relief as is appropriate under the circumstances.

<u>**COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
**(As to all Minor Plaintiffs and Against Defendant Castro)**

127.     Plaintiffs re-allege and incorporate paragraphs 1 through 126 of this Complaint as paragraph 127 of Count IV of this Complaint.

128.     At all relevant times, Defendant Castro was aware that the Minor Plaintiffs, were minors and vulnerable to emotional, psychological, and psychiatric, abuse and manipulation and he used that knowledge to achieve his objective of sexual gratification and abuse.

129.     On various dates and times during the period from on or about September 2017 until December 2021, Defendant Castro intentionally, willfully, and wantonly, engaged in continuing, recurring, and repeated grooming of the Minor Plaintiffs that later led to repeated course of sexual misconduct with the Minor Plaintiffs, which included:

(a) Exposing his private parts to the Minor Plaintiffs;

(b) Having the Minor Plaintiffs expose their private parts to and for Defendant Castro's sexual gratification;

(c) Inappropriate touching and fondling various areas of Minor Plaintiffs' bodies, including their buttocks and private parts;

24

(d) Penetrating Plaintiff James Doe's anus with his penis;

(e) Penetrating Plaintiff John Doe's private parts with his penis;

(f) Offering payment to Minor Plaintiffs for various sexual favors; and

(g) Otherwise emotional, physical, and sexual abuse of the Minor Plaintiffs.

130. The conduct of Defendant Castro in emotionally, physically, and sexually abusing the Minor Plaintiffs was extreme and outrageous.

131. Defendant Castro intended to inflict severe emotional distress upon the Minor Plaintiffs by his emotional, physical, and sexual abuse of the Minor Plaintiffs, cruelly disguised as "fatherly love," or knew that there was a high probability that his emotional, physical, and sexual abuse of them would cause the Minor Plaintiffs to suffer severe emotional distress.

132. As a direct and proximate result of one or more acts or omissions stated *supra*, the Minor Plaintiffs have suffered permanent injuries of a personal and pecuniary nature, including but not limited to pain and suffering, loss of normal life, great pain and anguish, medical expenses, severe emotional distress, and physical and emotional trauma, all of which are permanent in nature.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against Defendant Andrew Castro in an amount in excess of $100,000.00, plus punitive damages, and such other and further relief as is appropriate under the circumstances.

**COUNT V – NEGLIGENT SUPERVISION**
**(As to all Minor Plaintiffs and against Defendant CBOE)**

133. Plaintiffs re-allege and incorporate paragraphs 1 through 132 of this Complaint as paragraph 133 of Count V of this Complaint.

134.    During the period from on or about September 2017 to on or about July 2021 or the date of Castro's termination, Castro was allowed by Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, to stay in electronic communication with the Minor Plaintiffs by calling and texting them on their private phones despite there being no proper purpose for the conduct.

135.    During the period from on or about September 2017 to on or about July 2021 or the date of Castro's termination, Castro was allowed by Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, to transport the Minor Plaintiffs alone in his personal vehicle to various locations despite there being no proper purpose for that conduct.

136.    During the period from on or about September 2017 to on or about July 2021 or the date of Castro's termination, Castro was allowed by Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, to spend time alone with the Minor Plaintiffs at his various homes despite there being no proper purpose for the conduct.

137.    During the period from on or about September 2017 to on or about July 2021 or the date of Castro's termination, Castro sexually abused the Minor Plaintiffs in multiple ways as stated *supra*.

138.    During the period from on or about September 2017 to on or about July 2021 or the date of Castro's termination, Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, had a duty to the Minor Plaintiffs and other students to reasonably supervise, exercise reasonable care in their hiring and retention of Andrew Castro.

139. During the period from on or about September 2017 to on or about July 2021 or the date of Castro's termination, Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, had a duty to exercise reasonable care in their hiring, breached their duty in one or more of the following ways:

(a) Failed to properly and adequately investigate the background and qualifications of Andrew Castro to act as mentor and teacher and otherwise interact with minor students;

(b) Failed to properly supervise Andrew Castro;

(c) Allowed Andrew Castro to have inappropriate interactions with students including the Minor Plaintiffs;

(d) Allowed Andrew Castro to communicate with students outside of school premises using his/their private device(s) in said communication;

(e) Allowed Andrew Castro to transport the Minor Plaintiffs using his private vehicle;

(f) Disregard complaints and concerns expressed by students and members of the staff concerning Andrew Castro's conduct with the Minor Plaintiffs and other students;

(g) Failed to inform and warn the Minor Plaintiffs' parents when it became apparent that Andrew Castro was accused by another student of inappropriate behavior, that failure led to the rape of Plaintiff Younger Brother (totally preventable);

(h) Failed to discipline Andrew Castro for his inappropriate behavior, inappropriate interactions with students including the Minor Plaintiffs;

(i) Failed to terminate Andrew Castro for his inappropriate behavior, inappropriate interactions with students including the Minor Plaintiffs;

(j) Were otherwise careless and negligent in their hiring, supervision and retention of Andrew Castro.

27

140.    As a proximate result of one or more of the aforementioned negligent acts or omissions of supervision by Defendant CBOE, by and through their duly authorized agents and employees, including but not limited to those named herein, the Minor Plaintiffs were sexually abused on multiple occasions and suffered injuries and sustained damages including pain and suffering, medical expenses, loss of normal life, severe emotional distress, great pain and anguish, and physical and emotional trauma, all of which are permanent.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against Defendant CBOE, for all such compensatory relief that they are entitled to recover and in excess of $100,000.00, plus punitive damages, costs, and such other and further relief as is appropriate under the circumstances.

## COUNT VI – NEGLIGENT RETENTION
### (As to all Minor Plaintiffs and against Defendant CBOE)
.

141.    Plaintiffs re-allege and incorporate paragraphs 1 through 140 of this Complaint as paragraph 141 of Count VI of this Complaint.

142.    As more fully described above, Defendant Castro's inappropriate electronic communication with the Minor Plaintiffs; his transportation of the Minor Plaintiffs in his personal vehicle, and later his sexual abuse of the Minor Plaintiffs was negligent and led to severe emotional injuries to the Minor Plaintiffs.

143.    Sometime after September 2017 but prior to Defendant Castro committing sexual assault on the Minor Plaintiffs, Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, knew or should have known that Castro was unfit to be Chicago Public School teacher.

28

144.    CBOE by and through its duly authorized agents and employees, including but not limited to those named herein, had a duty to terminate Defendant Castro because they knew or should have known he was unfit for the position of a Chicago Public School teacher and that his continued employment in that position posed a danger to the Minor Plaintiffs and other students.

145.    As more fully described *supra*, Defendants Federico Garcia Lorca ELEMENTARY SCHOOL, The Board of Education of the City of Chicago, Chicago School District 299, July Cyrwus, and Sue Danielson, by and through their duly authorized agents and employees, including but not limited to other defendants named herein, had a duty to the Minor Plaintiffs and other students, not to engage in willful and wanton conduct with respect to the retention of Defendant Castro as a Chicago Public School teacher.

146.    During the period from on or about September 2017 to on or about July 2021, Defendants Federico Garcia Lorca ELEMENTARY SCHOOL, The Board of Education of the City of Chicago, Chicago School District 299, July Cyrwus, and Sue Danielson, by and through their duly authorized agents and employees, including but not limited to those named herein, had a duty to terminate Defendant Castro and, breached their duty in failure to do so.

147.    As a proximate result of failure to terminate Defendant Castro by Defendants Federico Garcia Lorca ELEMENTARY SCHOOL, The Board of Education of the City of Chicago, Chicago School District 299, July Cyrwus, and Sue Danielson by and through their duly authorized agents and employees, including but not limited to those named herein, the Minor Plaintiffs were sexually abused on multiple occasions and suffered injuries and sustained damages including pain and suffering, medical expenses, loss of normal life, severe emotional distress, great pain and anguish, and physical and emotional trauma, all of which are permanent.

29

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against Defendant CBOE, for all such compensatory relief that they are entitled to recover and in excess of $100,000.00, plus punitive damages, costs, and such other and further relief as is appropriate under the circumstances.

**COUNT VII – WILLFUL AND WONTON CONDUCT**
**(As to all Minor Plaintiffs and against Defendant CBOE)**

148.    Plaintiffs re-allege and incorporate paragraphs 1 through 147 of this Complaint as paragraph 148 of Count VII of this Complaint.

149.    During the period from on or about September 2017 to on or about July 2021 or until Castro's termination, Defendant Castro was allowed by CBOE, by and through their duly authorized agents and employees, including but not limited to those named herein, to keep electronic communication with the Minor Plaintiffs by calling and texting them on their private phones despite there being no proper purpose for the conduct.

150.    During the period from on or about September 2017 to on or about July 2021 or until Castro's termination, Defendant Castro was allowed by CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, to transport the Minor Plaintiffs alone in his personal vehicle to various locations despite there being no proper purpose for that conduct.

151.    During the period from on or about September 2017 to on or about July 2021 or until Castro's termination, Defendant Castro was allowed by CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, to spend time

alone with the Minor Plaintiffs at his various homes despite there being no proper purpose for the conduct.

152.     During the period from on or about September 2017 to on or about July 2021, until Castro's termination and beyond, Defendant Castro sexually abused the Minor Plaintiffs in multiple ways as stated *supra*.

153.     During the period from on or about September 2017 to on or about July 2021 or until Castro's termination, Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, had a duty to refrain from recklessness and willful and wanton conduct in their hiring, supervision, and retention of Defendant Castro.

154.     During the period from on or about September 2017 to on or about July 2021 or until Castro's termination, Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, had a duty to exercise reasonable care in their hiring, breached their duty in one or more of the following ways:

(a) Failed to properly and adequately investigate the background and qualifications of Defendant Castro to act as mentor and teacher and otherwise interact with minor students;

(b) Failed to properly supervise Defendant Castro;

(c) Allowed Castro to have inappropriate interactions with students including the Minor Plaintiffs;

(d) Allowed Castro to communicate with students outside of school premises using his/their private device(s) in said communication;

(e) Allowed Castro to transport the Minor Plaintiffs using his private vehicle;

31

(f) Disregard complaints and concerns expressed by students and members of the staff concerning Castro's conduct with the Minor Plaintiffs and other students;

(g) Failed to inform and warn the Minor Plaintiffs' parents when it became apparent that Castro was accused by another student of inappropriate behavior, that failure led to the rape of Plaintiff Younger Brother (totally preventable);

(h) Failed to discipline Castro for his inappropriate behavior, inappropriate interactions with students including the Minor Plaintiffs;

(i) Failed to terminate Castro for his inappropriate behavior, inappropriate interactions with students including the Minor Plaintiffs;

(j) Were otherwise careless and negligent in their hiring, supervision and retention of Castro.

155.     The aforementioned actions and/or omissions were performed by Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, with conscious disregard and/or utter indifference to the safety of the Minor Plaintiffs.

156.     As a proximate result of one or more of the aforementioned negligent acts or omissions by Defendant CBOE, by and through its duly authorized agents and employees, including but not limited to those named herein, the Minor Plaintiffs were sexually abused on multiple occasions and suffered injuries and sustained damages including pain and suffering, medical expenses, loss of normal life, severe emotional distress, great pain and anguish, and physical and emotional trauma, all of which are permanent.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against

Defendant CBOE, for all such compensatory relief that they are entitled to recover and in excess of $100,000.00, plus punitive damages, costs, and such other and further relief as is appropriate under the circumstances.

**COUNT VIII - FAILURE TO INTERVENE**
**(As to all Minor Plaintiffs and against Defendant CBOE)**

157.    Plaintiffs re-allege and incorporate paragraphs 1 through 156 of this Complaint as paragraph 157 of Count VIII of this Complaint.

158.    At all relevant times, Defendant CBOE, through its acts and omissions, failed to take any steps to protect the Minor Plaintiffs and/or prevent reasonably foreseeable harm to the Minor Plaintiffs.

159.    The failure to warn and/or publicly disclose to the Minor Plaintiffs, and their parents of past complaints against Defendant Castro, served the purpose of preventing those parents and Minor Plaintiffs, from assessing the safety or lack thereof provided for their children and taking advantage of their otherwise normal opportunities for protection.

160.    Defendant CBOE, by and through its agents and employees, acted with conscious disregard and reckless indifference to the safety of Minor Plaintiffs.

161.    As a direct and proximate cause of Defendant CBOE's utter indifference and/or conscious disregard for the safety of its students by failing to intervene, Minor Plaintiffs sustained personal, emotional, and psychological injuries.

**WHEREFORE,** Jack Doe and Jane Doe on behalf of the minors John Doe and James Doe, and Jill Roe on behalf of Joe Roe, pray that this Court enter judgment in their favor and against Defendant CBOE, for all such compensatory relief that they are entitled to recover and in excess

of $100,000.00, plus punitive damages, costs, and such other and further relief as is appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Respectfully Submitted,

/s/ *Patrycja R. Karlin*
Patrycja Karlin

Patrycja R. Karlin
***Attorney for Plaintiffs***
2501 W. Lawrence Ave; Suite H
Chicago, IL 60625
Phone: 773-878-8050
Attorney No. 6310074
pr.karlinlawfirm@gmail.com